## TYLER DAVIDSON & CO. *v.* WILLIAM KUHN, ET AL.

Where a constable, holding writs of attachment, gains admittance to the premises in which the goods of the defendant are, finds them under levy and in possession of another constable, then declares his intention to attach them, subject to the levy, to which the constable in possession assents and promises to pay to him any surplus; then causes them to be appraised, makes out a schedule, and returns the writs, stating in his return that he had attached the property, though the constable making the first levy continues in exclusive possession and sells—*Held:*

1. That this was an actual levy of the attachments, and not a mere declaration of an intention to levy.

2. That the duty to attach in the presence of two credible persons is directory, and not imperative; if omitted, the levy may be set aside, at the instance of the defendant, but is binding on third parties, and is well performed if the declaration is made in presence of persons *casually* present.

3. The rule that property in the hands of an officer, under judicial process, is in the custody of the law, and not subject to further seizure under process by another officer, is only adopted for the protection of the officer making the first seizure, and to avoid collisions of authority and conflicts of title.

4. The same goods may be taken on a second writ by the same officer, and where, having the goods in his possession, he consents or submits to a levy upon other writs by other officers, and to hold the goods as trustee or bailee for them, after the satisfaction of his own writs, the rule does not apply, and the subsequent levies are valid, binding the proceeds of a sale in his hands.

SPECIAL TERM.—Action upon a constable's bond.

The facts are sufficiently stated in the decision.

*Thomas C. Ware*, for plaintiffs.

*Stallo, Andrews & McCook*, for defendants.

SPENCER, J. This is an action brought to recover damages for breach of the condition of a constable's bond. The petition avers that the plaintiffs recovered a judgment before J. R. Baldridge, J. P., against Valentine Larox, for the sum of $250.45, and costs, on May 2, 1856, on which an execution was issued on the same day, and delivered on the day following to Kuhn, a constable of Cincinnati township, for service; that on the same 3d of May, Kuhn levied upon the property of the judgment debtor, advertised and sold the same for the sum of $1,064.11, and afterward, on May 31, returned said writ as follows:

"By virtue of this writ, I levied upon the goods and chattels previously levied upon by me by virtue of an execution issued by F. H. Rowekamp, a justice of the peace of Cincinnati township, upon the 29th of April, 1856, upon a judgment in favor of Henry Rohrkasse & Co. against the defendant, Valentine Larox, for the sum of $335.05, and costs, etc.; and also, previously, viz: on the 29th day of April, 1856, levied upon by B. Housman, constable, by virtue of two writs of attachment issued by said Rowekamp, etc., in two cases in which F. C. Baltman was plaintiff and Valentine Larox defendant, being for $369.13, and costs, etc. The goods were advertised, and sold to different persons, etc., for $1,064.11. Received in cash, $686. Due from Hollingshead & Co. $340.73; from Tyler Davidson & Co. $35.16; and fees retained, $107.30. Balance paid over to F. H. Rowekamp, for distribution, May 31, 1856.

"Signed,            WM. KUHN, *Constable*."

Petition avers that said return was false, in this: that previous to his having and receiving the plaintiffs' execution, the said goods and chattels had been levied upon by B. Housman, constable, by virtue of two writs of attachment, etc., for $369.13, and costs, said attachments, if levied at all, being levied after the plaintiffs' execution was delivered to said Kuhn, and after he had levied upon the said property. There are two other causes of action set forth in the same words, one for $250 and the other for $227, and costs, making in all $727.45, and costs.

The answer takes issue upon the averment of falsehood in these several returns, saying they were all true in fact.

It appears in evidence, that on April 29, 1856, Kuhn had in his hands the execution referred to in the petition, in favor of Rohrkasse & Co. for $335.05, and costs, and in the morning of that day levied upon all the goods and chattels of the defendant in execution, Larox, they being in his store on Western Row. He had with him another person, if not two, whose names are not given. He made out a schedule of the property, and attached it to his writ. While he was there, perfecting his schedule, and after he had levied, on the same day, Housman, also a constable of Cincinnati township, having in his hands two attachments against the property of Larox, issued by Rowekamp, in favor of F. C. Baltman, for $369.13, gained admittance to the premises, and, with the assent of Kuhn, attached all of said property, etc., as the property of Larox, subject to the prior levy and execution. According to the testimony of Kuhn, Housman took with him Peter Smith and another person; according to that of Housman, he went with Smith alone, and found the other man there. Housman, according to his own evidence, told Kuhn he would have to attach, subject to his levies, and did so attach; and thereupon Kuhn promised that if there should be a surplus on sale, he would pay it over to Housman. On the same day, Housman made out a schedule of the goods, copied from Kuhn's schedule, and on May 2, caused them to be appraised

by two freeholders. On April 30, three attachments were issued by Baldridge, in favor of the present plaintiffs, against Larox, and delivered to Higdon, constable, for service. On the afternoon of that day, Higdon went and caused the same property to be appraised on his writs, claiming also to attach it, but without the assent of Kuhn. Judgments having been rendered in these attachment cases, on May 3, executions issued upon them, which were delivered to Kuhn for service, as alleged in the plaintiffs' petition, and levied also as therein stated, subject to the prior levy and attachments in the hands of Housman. The goods were in the possession or control of Kuhn from the time of his first levy, on April 29, until their sale. Out of the proceeds of sale he paid fees, costs, and the amount due plaintiff in execution; the balance he paid over to Rowekamp, for distribution under the attachments of Housman and the present plaintiffs. Rowekamp ordered the Housman attachments to be first paid out of these moneys, and the residue to Tyler Davidson & Co., plaintiffs herein.

It is claimed by the plaintiffs that the attachment of this property by Housman was wholly null and void, and therefore was, in fact, no attachment at all, and so the defendant Kuhn's return was false. This claim of the plaintiffs is based upon three grounds: ·

1. That Housman did not, in fact, attach the property, but only declared an intention to attach.

2. That Housman did not attach in the presence of two freeholders, as the law requires.

3. That the property having been already levied upon by Kuhn, was in his custody and in the custody of the law, and was not therefore subject to an attachment.

I. Upon the first point, I think the testimony is clear that Housman not only declared an intention to attach, which is all that plaintiffs claim he did, but did in fact, make an attachment. What his precise language was, is perhaps uncertain, and is clearly not very material. In what he said, he meant not only to declare a purpose, but to perform

an act. It was so understood by Kuhn, who promised to hold the property subject to the attachment, after making the money on execution. It was so understood by Housman, who made at once a schedule of the property, took appraisers to appraise it, and returned on his writ that he had attached this property. What he actually said may not be accurately remembered, and may be misrelated; but what he did can not be misunderstood, and was regarded, on both sides, as the performance of an act.

II. As to the second point, the duty to attach in the presence of two credible persons, is directory and not imperative. It would, undoubtedly, be a ground for setting aside an attachment at the instance of the defendant, but does not render it absolutely void as to third parties. But it is not true in point of fact, that the attachment was not made in the presence of two credible persons. The evidence shows that it was made in the presence of three persons at least, Smith, Kuhn, and another whose name is not given. The law does not require that the witnesses shall be taken to the place by the constable, for the purpose of making the attachment, but simply that he shall declare, in their presence, that he does so attach. Kuhn says that Housman had two persons with him, Smith, and another whose name he either did not know or does not remember. If, then, the attachment was in fact made in the presence of two credible persons, the provisions of the law have, in this respect, been complied with, and the attachment was proper.

III. The third objection to this attachment is, that the property was already in the custody of the law, having been seized by Kuhn upon an execution in his hands, and was not, therefore, the property of Larox, subject to seizure on attachment. It is true, that when personal property has been seized on execution, and is in the hands of the officer, it is treated as in the custody of the law, and is said not to be liable to execution or attachment, or any other seizure at the hands of another officer, because, as is said, the seizure

changes the title, and it is no longer the property of the defendant in execution, but that of the officer. But this rule, I apprehend, is only adopted for the protection of the officer himself, to avoid collision of authority. It is not true that the title to the property is absolutely changed and passes to the officer. If this were so, when an officer had seized goods on execution, they would not be liable to another execution in his own hands, because not the property of the defendant in execution; and if that were the case, the plaintiffs here would have no cause of action, because at the time of putting their execution in the hands of Kuhn, there was nothing to levy on, these goods having already been taken by him on another execution. But goods levied upon by an officer under one execution, may be taken upon another placed in his hands. He levies upon the goods under both executions as the property of the defendant in execution. Hence, there is no danger of any conflict of authority, or of title. So, where the officer thus having the goods in his possession consents or submits to a levy upon another execution, or an attachment subject to his title, and to hold the goods as trustee or bailee for the other, after satisfaction of his own execution, there is no conflict or collision of authority. And there is no more reason, in law, why such second execution or attachment may not be levied, with his assent, than if it had been in his own hands for that purpose. This rule has been adopted, at special term, by two of the judges of this court, in the case of different executions held by different officers, and I can not perceive why it may not, with equal propriety, be applied in a case like the present.

Entertaining these views, I am of opinion that the plaintiffs have not made out a good cause of action, and that judgment should be entered for the defendants, with costs.

Judgment for defendants.